[Cite as *State v. Paddock*, 2026-Ohio-2635.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30640 |
| Appellee | : | |
| | : | Trial Court Case No. 2019 CR 02787/1 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| AARON C. PADDOCK | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 10, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately send a copy of the court's ruling to each party and note that action on the docket. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_Christopher B. Epley_

_____
CHRISTOPHER B. EPLEY, JUDGE

TUCKER, J., and HANSEMAN, J., concur.

AARON C. PADDOCK, Appellant, Pro Se
ANDREW T. FRENCH, Attorney for Appellee

EPLEY, J.

{¶ 1} Aaron C. Paddock appeals from a judgment of the Montgomery County Court of Common Pleas, which overruled his motion to vacate his violent offender database ("VOD") enrollment requirement. For the following reasons, the trial court's judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} According to a presentence investigation report and Paddock's testimony at his co-defendant's trial, during the overnight hours of August 20 to 21, 2019, Paddock met William Taylor, whom Paddock did not previously know, when Paddock was walking toward the east side of Dayton to sell methamphetamine, and he decided Taylor could help him in his drug sales. After using drugs themselves, the two encountered C.L., who was walking home from work. Taylor decided to rob C.L. and took his headphones. Paddock then punched C.L. several times, causing him to fall, and Taylor "stomped" on him. C.L. was dragged to a fence, stripped of his clothing, and beaten some more. Taylor tried to burn C.L.'s face. Eventually, C.L. was able to escape.

{¶ 3} Later, Paddock and Taylor broke a window at E.G.'s home on McLain Street. E.G. confronted them, and Paddock hit him on the head with a 2 x 4. The police were called, and Paddock and Taylor ran and went to a nearby residence on Boltin Street, which was occupied. The two entered through a window, and Taylor proceeded to break things in the house. The family inside fled to an upstairs bedroom. At Taylor's instruction, Paddock

followed and pushed on the door. The family reported that the perpetrators tried to get in the door and threatened to rape the children. The police arrived while this burglary was in progress. Paddock was arrested without incident. Taylor fled with police officers in pursuit, and he assaulted several officers before he was restrained.

{¶ 4} Soon after, Paddock was indicted on three counts of felonious assault (two serious harm and one deadly weapon) and one count each of aggravated robbery (serious harm), kidnapping (terrorize/physical harm), criminal damaging, and aggravated burglary (physical harm). C.L. was specified as the victim of the aggravated robbery and a felonious assault (Counts 1 and 3), E.G. was the victim of two felonious assault charges and criminal damaging (Counts 4-6), and the aggravated burglary concerned the residence on Boltin Street (Count 7). The kidnapping charge (Count 2) did not identify the victim.

{¶ 5} Approximately six months later, Paddock and the State reached a plea agreement, under which Paddock would plead guilty to the felony charges and would agree to testify against his co-defendant, William Taylor. In exchange, the State would dismiss the criminal damaging charge and would agree that Paddock would receive concurrent sentences.

{¶ 6} During the plea hearing, the trial court told Paddock that "at least one or more of these offenses is considered to be a violent offender offense and that triggers a violent offender specification or reporting requirement of you, and I will advise you of that at the time of sentencing. But I do tell you ahead of time that you will be designated as a violent offender, and you would have to register for a period of ten years on an annual basis." Paddock expressed that he understood. The court did not explain to Paddock that the requirement to enroll in the VOD was rebuttable and the process for rebutting the

3

presumption. At the end of the plea hearing, the court accepted Paddock's guilty pleas and ordered a presentence investigation. Sentencing was delayed until after Taylor's trial.

{¶ 7} More than two years later, on March 31, 2022, the sentencing hearing was held. After merging the felonious assault charges involving E.G., the trial court imposed concurrent sentences totaling six to nine years in prison on the five remaining charges and ordered Paddock to pay restitution and court costs. The court further informed Paddock that he would be required to register as a violent offender on account of the kidnapping charge, and it reviewed with him a form notifying him of his duties to enroll in the VOD. Paddock did not appeal from his convictions.

{¶ 8} On June 26, 2025, after his release from prison, Paddock moved for the trial court to vacate his VOD enrollment requirement. He argued that neither the trial court before sentencing nor a prison official prior to his release notified him of the presumption of enrollment in the VOD, of his right to file a motion rebutting the presumption, of the procedure and criteria for rebutting the presumption, and of the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcomes, as required by R.C. 2903.42.

{¶ 9} In its response, the State conceded that nothing in the record demonstrated that Paddock had been advised of his ability to rebut the presumption that he would be required to enroll in the VOD. The State asserted that this omission was nevertheless moot, because Paddock's testimony at Taylor's trial established that he was a principal offender in the kidnapping of C.L. and, consequently, Paddock could not rebut the presumption. The State argued that any failure to advise Paddock of the ability to rebut the presumption was therefore harmless. Alternatively, the State asked the court to hold a hearing to advise Paddock of his right to rebut the presumption and the procedures for doing so.

4

{¶ 10} On September 22, 2025, the trial court overruled Paddock's motion, finding that the failure to advise him of his right to rebut the presumption was moot. It reasoned that Paddock's testimony at Taylor's trial established that he had restrained the liberty of the victim for the purpose of committing aggravated robbery and that he would be unable to rebut the presumption of enrollment even if he were granted a hearing.

{¶ 11} Paddock, pro se, appeals from the trial court's judgment, raising four assignments of error. He argues that (1) the trial court erred in failing to inform him of his right to rebut the presumption that he enroll in the VOD as a violent offender, (2) the court erred in denying his motion to vacate his VOD enrollment requirement by adopting the State's response in its decision, (3) the prosecutor engaged in misconduct throughout his case, and (4) the court erred in failing to merge allied offenses of similar import. We address Paddock's assignments of error in a manner that facilitates our analysis.

## II. Lack of Notice under R.C. 2903.42(A)(1)(a)

{¶ 12} In his first assignment of error, Paddock claims that the trial court erred and deprived him of due process by failing to inform him, either prior to sentencing or his release from prison, of his statutory right to rebut the presumption that he enroll as a violent offender. His second assignment of error asserts that the trial court erred in denying his motion to vacate his enrollment requirement by failing to conduct an independent review and in adopting the rationale in the State's opposition memorandum. The State responds that Paddock's arguments are barred by res judicata.

{¶ 13} "Senate Bill 231, known as Sierah's Law, established a statewide violent offender database, along with the legal presumption that offenders convicted of certain violent crimes must enroll in the database for a period of 10 years following their release from prison." *State v. Williams*, 2021-Ohio-1340, ¶ 128 (2d Dist.), citing R.C. 2903.41

5

through R.C. 2903.43. As relevant to Paddock, the term "violent offender" includes a person who pleads guilty to kidnapping. R.C. 2903.41(A)(1)(a).

{¶ 14} Individuals who are classified as violent offenders are presumed to be required to enroll in the VOD with respect to the classifying offense. R.C. 2903.42(A)(1)(a). The presumption is rebuttable, and the sentencing court must inform the offender before sentencing of the presumption, of the offender's right to file a motion to rebut the presumption, of the procedure and criteria for rebutting the presumption, and of the possible outcome. R.C. 2903.42(A)(1)(a).

{¶ 15} If an offender was incarcerated on a classifying offense when R.C. 2903.41 became effective on March 20, 2019, the offender must be notified before release of the presumption, the right, the procedure and criteria, and the possible outcome. *See* R.C. 2903.41(A)(2); R.C. 2903.42(A)(1)(b). Paddock relies, in part, on this provision, but it is inapplicable to him.

{¶ 16} To rebut the presumption, a violent offender must file a motion with the trial court, prior to or at sentencing, asserting that he or she was not the principal offender in the commission of the classifying offense and requesting that the court not require enrollment in the VOD. R.C. 2903.42(A)(2)(a). The offender bears the burden to establish by a preponderance of the evidence that he or she was not the principal offender in the commission of the offense. R.C. 2903.42(A)(4). If the violent offender proves that he or she was not the principal offender, the court must "continue the hearing for the purpose of determining whether the offender, notwithstanding the rebuttal of the presumption, should be required to enroll in the violent offender database and have all VOD duties with respect to that offense." R.C. 2903.42(A)(4)(a).

{¶ 17} In this case, Paddock asserts, and the State concedes, that the trial court failed to provide him the notifications required by R.C. 2903.42(A)(1)(a). Paddock further argues that the court erred in concluding that he could not establish that he was not the principal offender, because the kidnapping charge was not based on the conduct toward C.L., as the State contended, but was based on his actions at the residence on Boltin Street.

{¶ 18} It is not entirely clear what conduct formed the basis of Paddock's kidnapping charge. Kidnapping was Count 2 of the indictment, and it was sandwiched between the aggravated robbery (Count 1) and felonious assault (Count 3) charges, which both alleged that C.L. was the victim. Although the placement of the kidnapping charge supports a conclusion that it also related to C.L., the indictment did not specify the victim of the kidnapping. Defense counsel requested a bill of particulars, but none was filed. At the plea hearing, the State articulated the facts and circumstances of the case by quoting the indictment, which used the statutory language for the offenses. Nothing in the record clarifies what conduct formed the basis for the kidnapping charge.

{¶ 19} In its response to Paddock's motion to vacate, the State directed the trial court to Paddock's testimony at Taylor's trial. Taylor was indicted similarly to Paddock, although he had additional charges and specifications. Like Paddock's indictment, Counts 1 and 3 of Taylor's indictment related to C.L., and the kidnapping charge was Count 2. No bill of particulars was filed in Taylor's case either.

{¶ 20} At Taylor's trial, the prosecutor indicated that C.L. was the victim of the kidnapping, and it repeatedly stated that the charge was based on C.L.'s being dragged from the sidewalk to a fence for the purpose of inflicting serious physical harm or terrorizing him. The State described the kidnapping charge in its opening statement, stating that the evidence would show that C.L. "tried to get away from both of these individuals, and he was

7

drug back. In fact, you are going to see pictures of his injuries that are consistent with being drug across that pavement." The State's closing argument highlighted the evidence that C.L. "was clearly removed from a place against his will. You saw the drag marks on his back. The testimony was that he was dragged by his legs. He clearly did not want to be going with these defendants. He was clearly forced, physically forced to go from that sidewalk to that back fence area and did remove another from a place where the other person was found or restrained the liberty of that person."

{¶ 21} Paddock testified about the attack on C.L., which began when Taylor grabbed C.L.'s headphones. Paddock admitted that he then hit C.L. on the side of his stomach with a closed fist, causing him to fall down, and punched C.L. a few more times after he fell. Taylor Trial Tr. 352. At that point, Taylor started stomping C.L. "[a]nywhere his foot can reach." Paddock stated that Taylor grabbed C.L. by his legs, dragged him several feet to a fence in a grassy area, and began to strip off C.L.'s clothes. Taylor continued to beat C.L. and attempted to burn C.L.'s face with a lighter. Eventually, C.L. was able to get up and escape. Paddock testified that all he did was "watch[], for the most part," when Taylor dragged C.L., and he denied participating in the removal of C.L.'s clothing.

{¶ 22} Assuming that Paddock's kidnapping charge involved C.L., we disagree with the trial court that Paddock's trial testimony necessarily precluded a claim that he was not a principal offender in the kidnapping. Paddock's testimony reflected that he punched C.L. several times at the beginning of the violent encounter, but he did not actively participate in dragging C.L. to a different location or in further assaulting him. Paddock had at least a colorable argument that he was not a principal offender in the kidnapping.

{¶ 23} We thus turn to whether the trial court erred in denying the motion to vacate, given the court's failure to provide Paddock the advisements required by

8

R.C. 2903.42(A)(1)(a). The State asserts that, under the doctrine of res judicata, Paddock could not challenge that failure through his motion to vacate. We agree with the State.

{¶ 24} It is well established that res judicata precludes consideration of issues that were or could have been raised on direct appeal. *State v. Saxon*, 2006-Ohio-1245, ¶ 17; *State v. Shah*, 2023-Ohio-2328, ¶ 12 (2d Dist.). Under this doctrine, "a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant . . . on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus; *State v. Moody*, 2024-Ohio-864, ¶ 15 (2d Dist.).

{¶ 25} Paddock did not file a direct appeal from his convictions. Nevertheless, the trial court's failure to provide the notifications in R.C. 2903.42(A)(1)(a) prior to sentencing could have been raised in a direct appeal. *See, e.g., State v. Wright*, 2021-Ohio-4107 (2d Dist.); *State v. Smith*, 2025-Ohio-990 (2d Dist.). Indeed, in cases that have raised this issue on direct appeal, we have held that "the failure to comply with these requirements will result in the reversal of a trial court's order to enroll in the violent offender database and a corresponding order to provide, on remand, the appropriate advisements and the opportunity to file a motion to rebut the presumption for enrollment." *State v. Smith*, 2026-Ohio-144, ¶ 10 (2d Dist.).

{¶ 26} Paddock's affidavit in support of his motion to vacate stated that his defense counsel had not informed him about his right to rebut the presumption of enrolling in the VOD, and until shortly before his release from prison, he was unaware of the trial court's obligation under R.C. 2903.42(A)(1)(a) and of his right to rebut the presumption of enrollment. Paddock points to *State v. Brown*, 2021-Ohio-4130 (8th Dist.), for the proposition

that an offender may file an untimely motion to vacate the enrollment requirement when he or she was not timely provided the statutory advisements. In *Brown*, the Eighth District considered the motion to be timely because Brown was challenging the constitutionality of Sierah's Law, not whether he was a principal offender. Accordingly, *Brown* is inapposite to Paddock's situation. While we are sympathetic to Paddock's predicament, these circumstances did not permit him to file a postconviction motion to vacate on the ground that the trial court had failed to provide the required advisements.

{¶ 27} In short, although we disagree with the trial court's rationale, the trial court properly denied Paddock's motion to vacate as it was barred by res judicata. Accordingly, Paddock's first and second assignments of error are overruled.

### III. Other Issues

{¶ 28} Paddock's third and fourth assignments raise issues that are unrelated to the VOD notifications. His third assignment of error claims that the prosecutor engaged in misconduct throughout his case, and his fourth assignment of error asserts that the trial court erred by failing to merge allied offenses of similar import.

{¶ 29} Paddock argues that the prosecutor engaged in misconduct by holding a coercive plea meeting with him without his defense counsel physically present, by associating the aggravated robbery and kidnapping charges to the same event, by mislabeling the violent offender notification form in the docket, by advocating at sentencing for the maximum sentence, and by opposing his motion to vacate in bad faith.

{¶ 30} Apart from Paddock's claim regarding the State's response to his motion to vacate, none of the issues he raises is relevant to whether the trial court properly overruled his motion to vacate his VOD enrollment requirement. As to the State's response to Paddock's motion to vacate, we cannot conclude that it amounted to bad faith. Paddock's

10

affidavit supporting his motion to vacate complained of how the VOD notice was labeled on the docket, but the prosecutor bore no responsibility for that. The other issues Paddock raises are not properly before us in this appeal. Paddock's third assignment of error is overruled.

{¶ 31} Finally, Paddock failed to raise the trial court's failure to merge allied offenses of similar import in his motion. Paddock's allied-offense argument could have been raised on direct appeal or, if evidence outside the record were required, by a timely petition for postconviction relief. The argument is also now barred by res judicata.

{¶ 32} Paddock's third and fourth assignments of error are overruled.

## IV. Conclusion

{¶ 33} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and HANSEMAN, J., concur.